474 So.2d 475 (1985)
Brenda TREITLER
v.
AMERICAN DRUGGISTS' INSURANCE COMPANY, et al.
No. CA-3160.
Court of Appeal of Louisiana, Fourth Circuit.
August 6, 1985.
*476 Robert J. Mack, Mack & O'Neal, Hammond, for plaintiff-appellee.
Avery T. Waterman, Jr., McGlinchey, Stafford, Mintz, Cellini & Lang, P.C., William F. Bologna, New Orleans, for defendants-appellants.
Before KLEES, LOBRANO and BYRNES, JJ.
BYRNES, Judge.
This is an appeal from a judgment awarding plaintiff-appellee, Brenda Treitler, damages for injuries she received in a collision between a taxi cab and the horse she was riding.

FACTS
On February 10, 1982 Robert A. Dalon, defendant-appellant, was driving his taxi cab southeast on St. Bernard Highway in St. Bernard Parish. John Perez, a trainee driver for Arabi Cab Company, also a defendant-appellant, was riding in the front seat, and there were four fare paying passengers in the back seat. The weather was clear and dry. It was between dusk and dark and the cab had its headlights on low bean.
Between 5:30 and 6:00 p.m. Brenda Treitler, appellee, was returning from a horseback ride. To return to the stables it was necessary for her to cross St. Bernard Highway. She stopped along the shoulder of the road and looked to her left and right. She estimated that the Dalon vehicle was two to three blocks away and so she began to cross the street. Shortly thereafter, the cab struck the horse in its left rear quarter. As a result appellee was thrown from her horse and sustained lacerations about the face as well as musculoskeletal sprains.
Plaintiff brought suit against Robert Dalon, RCH Company, Inc. d/b/a Arabi Cab Co., and American Druggists' Insurance Company, Arabi's Insurer. After a trial on the merits, the judge took the matter under advisement. Judgment was ultimately rendered for appellee and against defendants in solido, in the amount of $15,695.88. However, the judge found both parties to be 50% at fault and, defendants were therefore held liable for $7,847.94. Appellants filed a motion for a new trial which was denied and this appeal followed.

ASSIGNMENTS OF ERROR
Appellants specify the following assignments of error:
1). The trial court was manifestly erroneous in finding that the cab driver operated his vehicle in the wrong lane of traffic, at an excessive rate of speed, burning only one headlight, and failing to keep a proper lookout. Thus, he should not have been found to be 50% at fault;
2). The award for future medical expenses was too speculative; and
3). The costs for the deposition of Dr's Pusater and Cabiran were paid by defendants prior to trial and thus the award for same is erroneous.

FINDINGS OF FACT BY THE TRIAL COURT
We may not reverse the findings of fact of the trial court unless, after scrupulous review of the entire record, we find that the findings are clearly wrong or unsupported by the evidence. Arceneaux v. Dominigue, 365 So.2d 1330 (La.1978).
In the case at bar, appellee testified that just prior to the accident she saw the cab swerving into the improper lane of traffic. She stated further that she only noticed one headlight burning. The driver and trainee, stated that they were traveling within the speed limit, with both headlights burning, and in the proper lane of traffic. *477 They contend the cab only swerved at the last minute when they applied the brakes in an effort to avoid a collision with appellee and her horse who appeared suddenly before the cab.
The testimony of the investigating officer, the only disinterested party to testify, sheds little light on the situation. He did not witness the accident but surmised that the cab was operating in the proper lane of traffic when the accident occurred. He testified that he could determine this from the position of debris which fell off the cab after the collision. The officer reported no malfunctions on the cab and issued no citations. Although the defendant originally intended to offer this witness as an expert in the field of accident investigation it is unclear whether the court ever recognized him as such. However, given the court's ultimate findings, the trial judge apparently gave little weight to this testimony.
With the exception of the investigating officer, the testimony of both sides was self serving. Thus, the trial court was presented with a situation wherein he was called upon to weigh the credibility of the witnesses in reaching his ultimate decision.
The trial court's determinations regarding the credibility of witnesses is given great weight and will not be disturbed absent a showing of manifest error. Long v. State, Through Department of Transportation and Development, 463 So.2d 957 (La.App. 3rd Cir.1985). In the present case, the trial court found appellee's version of the accident to be somewhat more credible. In its reasons for judgment the court stated:
[T]he evidence shows that Mr. Dalon was operating his vehicle ... with one headlight operating, driving ... in the wrong lane of traffic, ... at a speed at which he was unable to avoid the accident, ... and that he failed to see what he should have seen ... (Reasons p. 1)
However, the trial judge also stated that appellee crossed the highway at a hazardous location, in the dark, without wearing the proper reflective apparatus. Thus, the trial court gave some credence to the claims of both sides in finding each 50% at fault.
While we would prefer to see some independent corroboration of either side's story, under these circumstances, we cannot say that the findings of fact and allocation of fault in this case are manifestly erroneous.

AWARD FOR FUTURE MEDICAL EXPENSES
By this assignment appellants contend that the trial court erred in awarding future medical expenses because such an award was too speculative given the lack of evidence in this regard.
The trial court awarded appellee $1300.00 for future medical expenses. This amount was for plastic surgery to attempt correction of facial scars sustained by appellee in the accident.
The only direct evidence relative to the necessity for such surgery or the approximate cost thereof was the deposition of Dr. Elliot Black, submitted via stipulation at the start of the trial. Dr. Black testified that after examining appellee he would not recommend surgery for the scar. He stated that surgery would not eliminate the scar and that in fact it might be worse after surgery. The doctor testified that, at best, the scar would remain unchanged. He stated further, that the scar had healed quite well and had good coloration relative to appellee's natural skin color. Regarding the cost of such an operation Dr. Black estimated the cost to be approximately $500.00, the hospital would charge $350.00, and medication would be about $50.00. He also stated that appellee would likely miss approximately one week of work.
The court apparently based its decision to award future medical expenses partly on discussions which took place during the pre-trial conference. The record reflects the following exchange between the court and appellee:
The Court:
As I understand it, from the pre-trial discussion, the doctor made certain recommendations. *478 Some kind of plastic surgery.
The Witness:
Yes. (Tr at 37).
However, in response to questioning by appellant's attorney, appellee admitted that Dr. Black did not recommend the surgery:
Q: Did Dr. Black recommend anything to be performed to correct the scar?
A: Plastic Surgery
Q: Did he recommend it, him?
A: No. (Tr at 48)
Nevertheless, it is apparently appellee's desire to have the surgery.
No evidence was presented to refute Dr. Black's findings. In fact, Dr. Black was retained by appellee.
It is well settled that future medical expenses must be proven with some degree of certainty. Wilson v. Magee, 367 So.2d 314 (La.1979). Further, where a medical expert indicates that future medical expenses are not probable then the evidence will not support an award for such expenses. Wilson v. Magee supra
In the case at bar, Dr. Black's uncontradicted testimony established that he did not recommend cosmetic surgery, and that even if surgery were performed there would be no improvement. Accordingly, we conclude that the evidence presented at trial does not support an award for future medical expenses.

DEPOSITION COSTS
By this final assignment, appellant contends that the trial court erred in awarding $500.00 for the cost of deposing Dr.'s Pusateri and Cabiran. Appellant argues that upon moving the trial court to amend the judgment by removing these costs they showed that they had already paid for these depositions. Nevertheless, the trial court denied the motion.
Appellee, in her brief to this court, states that she is aware of the fact that appellants have paid for the depositions and is therefore willing to credit them against the judgment for same. In effect then, she does not dispute their argument.
Since appellants have shown that they paid for these depositions, and since appellee is not opposed to their being credited for same, we conclude that these fees should be deleted from the total judgment.

CONCLUSION
The trial court was not clearly wrong in its findings of fact and assessment of liability herein. However, the award for future medical expenses was too speculative and thus will be set aside. Further, the award for the deposition fees of Dr.'s Pusateri and Cabiran were improper and likewise are set aside.
Accordingly the total award should now be $13,895.88. Reduced by 50% for appellees degree of fault to yield the sum of SIX THOUSAND NINE HUNDRED FORTY SEVEN AND 94/100 ($6947.94) DOLLARS.
Costs of this appeal are to be borne equally by the parties.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.